UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELL L.,[1]

                              Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

DECISION & ORDER

21-CV-6275MWP

**PRELIMINARY STATEMENT**

        Plaintiff Michell L. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been assigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 14).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 6, 9). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

3

> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and
>
> (5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     **The ALJ's Decision**

In his decision, the ALJ first determined the relevant period at issue. He noted that plaintiff originally filed an application for DIB on November 1, 2017, alleging disability beginning December 1, 2015. (Tr. 16).[2] The ALJ then determined through plaintiff's earnings records that she remained insured through December 31, 2018. (*Id.*). Accordingly, the ALJ concluded that the relevant period of the current application is December 1, 2015, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 16-17).

Next, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 18-26). Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity between December 1, 2015 and December 31, 2018. (Tr. 18). At step two, the ALJ concluded that plaintiff had the following severe impairments through the date

---

[2] References to page numbers in the Administrative Transcript (Docket # 5) utilize the internal Bates-stamped pagination assigned by the parties.

last insured: degenerative disc disease/arthritis of the lumbar spine and obesity. (*Id.*). The ALJ also found that plaintiff had several non-severe impairments, including hypothyroidism, headaches/migraines, neutropenia, burnt abdominal nerve, and colitis.[3] (Tr. 18-19). With respect to plaintiff's meniscus injury and depression, the ALJ found that she had recently started treatment for these conditions, and the durational requirements thus had not been met. (Tr. 20). At step three, the ALJ determined that plaintiff did not, through the date last insured, have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments. (*Id.*).

      The ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations through the date last insured. (Tr. 20-24). Specifically, the ALJ found that plaintiff could sit and stand/walk up to six hours in an eight-hour day, lift/carry ten pounds frequently, and lift/carry twenty pounds occasionally. (Tr. 20-21). He also found that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (*Id.*). At steps four and five, the ALJ determined that plaintiff, through the date last insured, was capable of performing her past relevant work as a case aide, data entry clerk, caseworker, and cashier/checker; the ALJ further determined, in the alternative, that there were other jobs that existed in significant numbers in the national economy that plaintiff was capable of performing, such as document preparer, addresser, and tube operator. (Tr. 24-26). Accordingly, the ALJ found that plaintiff was not disabled between December 1, 2015, the alleged onset date, through December 31, 2018, the date last insured. (Tr. 26).

---

[3] The ALJ also found that the record did not "substantiate the existence of . . . fibromyalgia and colitis/inflammatory bowel disease as medically determinable impairments." (Tr. 20).

### III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence.  (Docket # 6).  Plaintiff's sole challenge is that, despite finding the consultative examiner's opinion persuasive, the ALJ failed to incorporate into the RFC – or explain why it was not incorporated – the examiner's conclusion that plaintiff had moderate sitting, standing, and walking limitations.  (Docket # 6-1 at 6-9).

### IV.   Analysis

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010) (summary order).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence, including the medical opinion of record and prior administrative medical

findings. (Tr. 22-24). He also found that her reported daily activities and course of treatment did not support her allegation of disability. (Tr. 23-24).

On December 5, 2017, the consultative examiner, Richard Benivegna, MD, conducted an internal medicine examination of plaintiff. (Tr. 687-91). During the examination, plaintiff reported a history of fibromyalgia, with the following symptoms: generalized pain and tenderness, including around her hair follicles, some intermittent swelling of the hands and feet, and tenderness of the hands and feet associated with paresthesia. (Tr. 687). She claimed that her symptoms affected her ability to walk or stand and generally limited her activities. (*Id.*). She stated that various treatments had been ineffective. (*Id.*).

Plaintiff also complained of constant and sharp lower back pain that made it difficult to sit, stand straight, or walk distances. (*Id.*). She referred to x-rays that "told of disc disease" and "showed bone on bone." (*Id.*). She conveyed that she had been taken out of work due to this problem. (*Id.*). Plaintiff asserted that various treatments for her low back had not been effective. (*Id.*). Further, plaintiff complained that since August or September 2017 her left knee "had some episodes of sharp pain and occasionally ha[d] locked." (*Id.*). She indicated that these symptoms made it "problematic" to climb stairs. (*Id.*). Additionally, plaintiff referred to nerve pain in her abdomen and left side after a cholecystectomy and appendectomy, for which she regularly took Percocet. (Tr. 688). She described her pain as burning, stabbing, and constant, "from a 2 to 10/10." (*Id.*).

Plaintiff reported a diagnosis of "colitis" associated with bilious vomiting, pain, and diarrhea, for which she had recently presented to the emergency department. (*Id.*). Tests suggested that she had "some sort of 'infection,'" and she had been given an antibiotic and Zofran for nausea. (*Id.*). She also had presented to the emergency department for a severe

headache and had been prescribed Imitrex for migraines. (*Id.*). Dr. Benivegna documented that plaintiff reported a history of neutropenia, for which she was being monitored biannually by the Wilmot Cancer Center. (*Id.*). She reported that her counts were currently stable. (*Id.*).

Dr. Benivegna noted upon examination that plaintiff "appeared to be in no acute distress." (Tr. 689). Plaintiff demonstrated an antalgic gait and could squat about 1/3 full of normal but could tentatively walk on her heels and toes, had a normal stance, used no assistive devices, needed no help changing or getting on or off the examination table, and was able to rise from a chair without difficulty. (*Id.*). As it related to plaintiff's musculoskeletal examination, Dr. Benivegna reported that plaintiff's cervical spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." (Tr. 690). Plaintiff's thoracic spine displayed no signs of scoliosis, kyphosis, or abnormality. (*Id.*). Her lumbar spine's flexion was limited to sixty degrees but showed full extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Dr. Benivegna noted that straight leg tests were positive at ten degrees bilaterally but negative while sitting. (*Id.*). Plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, and ankles bilaterally, but she declined hip and knee range of motion testing due to discomfort in her lower back. (*Id.*). Plaintiff's joints were stable and nontender. (*Id.*). Dr. Benivegna identified no trigger points, subluxations, contractures, ankylosis, thickening, redness, heat, swelling, effusion, or noted sensory deficit. (*Id.*). Dr. Benivegna reported 5/5 strength in the upper and lower extremities. (*Id.*). He reviewed an x-ray of plaintiff's lumbosacral spine that demonstrated no significant bony abnormality. (Tr. 691). In terms of activities of daily living, plaintiff stated that she needed help bending, standing, and sitting, and therefore could not cook clean, do laundry, shop, or care for herself for prolonged

periods of times.  (Tr. 689).  She stated that she watched television, listened to the radio, read, and socialized with friends.  (*Id.*).

Based upon his examination of plaintiff, Dr. Benivegna opined that plaintiff had moderate limitations in prolonged standing, sitting, and walking.  (Tr. 691).  He also opined that she had moderate limitations in bending, kneeling, squatting, climbing stairs, and heavy lifting/carrying.  (*Id.*).  The ALJ considered Dr. Benivegna's opinion persuasive based on his programmatic expertise and complete examination.  (Tr. 23).  The ALJ also noted that Dr. Benivegna's opinion was generally consistent with clinical findings and diagnostic testing.  (*Id.*).

As an initial matter, the Court notes that plaintiff contends incorrectly that the ALJ's RFC did not include any sitting, standing, or walking limitations.  (*See*, *e.g.*, Docket # 6-1 at 6, 7).  To the contrary, the RFC restricted plaintiff to light work and assessed that she could sit, stand, or walk for only up to six hours in an eight-hour day.  (Tr. 20-21).  To the extent plaintiff alleges that the light work RFC determination is necessarily inconsistent with Dr. Benivegna's opinion that plaintiff had moderate limitations regarding prolonged standing, sitting, and walking, I disagree and conclude that the ALJ's determination was supported by the record. *See*, *e.g.*, *Cook v. Comm'r of Soc. Sec.*, 2020 WL 1139909, *3 (W.D.N.Y. 2020) ("[t]he ALJ's RFC determination clearly incorporated the 'mild to moderate limitations' opined by [consulting physician] 'for prolonged walking, bending, and kneeling' . . . , which is demonstrated by the ALJ's determination to limit [plaintiff] to light work, with only occasional balancing, stooping, kneeling, and crouching") (collecting cases); *Grega v. Berryhill*, 2019 WL 2610793, *10 (W.D.N.Y. 2019) ("although some courts have found that moderate limitations for exertional work activities such as prolonged sitting, walking, standing, lifting, pushing, and pulling may be inconsistent with an ability to perform the full range of light work, other courts have concluded

otherwise"), *aff'd*, 816 F. App'x 580 (2d Cir. 2020) (summary order); *Varnum v. Colvin*, 2016 WL 4548383, *17 (W.D.N.Y. 2016) ("several courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing") (quotation omitted). Indeed, in this case, the state agency medical consultant – who considered Dr. Benivegna's opinion and noted that it was supported by and consistent with objective findings – also found that a light work RFC with additional postural limitations was appropriate and that plaintiff was capable of sitting, standing, or walking for about six hours in an eight-hour day.[4] (Tr. 443-44, 447).

        Moreover, plaintiff's ability to sit, stand, and walk for up to six hours per day during the relevant time period is supported by other evidence in the record, and the ALJ provided reasons "tending to support the finding that, despite the moderate limitations[,] . . . [plaintiff] could still perform light work." *Carroll v. Colvin*, 2014 WL 2945797, *4 (W.D.N.Y. 2014); *see Collier v. Colvin*, 2016 WL 4400313, *3 (W.D.N.Y. 2016) (consultative opinion that plaintiff was moderately limited in standing and walking supported ALJ's RFC assessment that plaintiff could perform light work where ALJ's decision summarized the medical evidence and explained how that evidence demonstrated that plaintiff could work despite those limitations). The ALJ supported his determination that plaintiff could perform the requirements of light work with postural limitations by discussing the conservative treatment sought by plaintiff, which did not include any surgical interventions. (Tr. 24). The ALJ referenced treatment notes that reported poor compliance with physical therapy, an x-ray from January 2018 that was within normal limits, plaintiff's report in July 2018 that her pain had improved to a 2/10, a September 2019 musculoskeletal examination in which she was diagnosed with chronic midline back pain

---

[4] The ALJ found this opinion "somewhat persuasive" because the medical consultant did not review the file in its entirety. (Tr. 23).

but was negative for weakness, and her doctor's decision to start "wean[ing] her off Percocet." (Tr. 21-22). In addition, in assessing plaintiff's credibility, the ALJ found that her "reported daily activities [are] greater than one might expect, given [her] allegations of total disability." (Tr. 24). The ALJ noted that plaintiff could dress, bathe, and use the bathroom independently,[5] lived in an apartment on the second floor with no elevator, could ride in a car or use public transportation,[6] and was involved in her grandchild's care.[7] (Tr. 21, 24). He also noted that during the consultative examination plaintiff had no difficulty rising from the chair and needed no help changing for the exam or getting on and off the examination table.[8] (Tr. 24). Treatment notes also reflected that her physical demands at home included self-care, housekeeping, and hobbies, and listed "walking" as a sport or activity. (Tr. 1238 (February 13, 2018); Tr. 1050 (July 5, 2018); Tr. 1185 (April 8, 2019 record noting that her walking was limited by pain but adding gardening/yard work to physical demands of home); Tr. 1255 (September 18, 2019 record revising her sport/activities to "NONE")). I conclude that the ALJ's RFC assessment was supported by the record. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) (summary order)

---

[5] Although plaintiff testified that her husband helped her in the shower (Tr. 415), a treatment record from September 19, 2019 noted that she had "good mobility without assistive devices" and "good" ability to perform activities of daily living "without assistance" (Tr. 84).

[6] Plaintiff testified that because of back pain associated with sitting in an upright position, she only drove when she had to for appointments – about three to four times a month – and only for short distances. (Tr. 401-402). Treatment records reflected that as recently as August 2019 she was using motorized scooters to get around in grocery stores. (Tr. 1227). *But see* Tr. 415 (stating that her husband does the grocery shopping).

[7] Plaintiff testified that her granddaughter went to school during the day and came to her house for only fifteen or twenty minutes in the mornings to get on the bus. (Tr. 427-28). Plaintiff testified that this routine had been ongoing for about one to two years. (Tr. 428). She acknowledged that she watched her granddaughter for a month before she began school (Tr. 427), and numerous notations in the record from different providers discussed plaintiff's caretaking for her grandchild. (*See* Tr. 75 (September 19, 2019 record listing her home environment as taking care of her granddaughter); Tr. 1218 (September 5, 2019 record noting that she "often cares for her young granddaughter at home and needs to be around when she gets off the bus from school"); Tr. 1084-85 (August 8, 2018 record stating that she watches her granddaughter during the day).

[8] Dr. Benivegna examined plaintiff on the same day that plaintiff reported in her functional report that she needed help dressing, bathing, and engaging in other forms of personal care. (Tr. 594-95, 689).

("[u]pon our independent review of the existing record, including [the consultative examiner's] opinion and the treatment notes from [plaintiff's] doctors, we conclude that the ALJ's residual functional capacity determination was supported by substantial evidence"); *Matejka v. Barnhart*, 386 F. Supp. 2d at 204 ("if the ALJ's findings are supported by substantial evidence[,] . . . the findings will be sustained even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise").

## CONCLUSION

After a review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED**. Plaintiff's motion for judgment on the pleadings **(Docket # 6)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

        *s/Marian W. Payson*
        MARIAN W. PAYSON
        United States Magistrate Judge

Dated: Rochester, New York
      August 3, 2023